No. 28,881.

THE STATE OF KANSAS, ex rel. JAMES A. CONLY, County Attorney, *Appellee,* v. THE RIVERSIDE DRAINAGE DISTRICT OF SEDGWICK COUNTY, *Appellant.*

(281 Pac. 881.)

Opinion filed November 9, 1929.

*Jean Madalene,* of Wichita, for the appellant.

*Robert C. Foulston, V. Harris, George Siefkin* and *M. P. Shearer,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The Riverside drainage district appeals from an order commanding it to construct a certain concrete dam and dig a certain ditch or ditches as described in the findings of fact made by the court.

This is the second appeal in this action. The opinion on the former appeal is found at *State, ex rel., v. Riverside Drainage District,* 123 Kan. 46, 254 Pac. 366, and an opinion denying a rehearing is found in *State, ex rel., v. Riverside Drainage District,* 123 Kan. 393, 255 Pac. 37. In the opinion found in 123 Kan. 46, 254 Pac. 366, are set out twenty-five findings of fact and eight conclusions of law made by the trial court. This court there affirmed the judgment against the Riverside drainage district, which ordered the district to remove the dike, dam and ditches complained of, and to return the land to the condition in which it existed prior to their construction. The judgment of this court, on the motion for rehearing, found in 123 Kan. 393, 255 Pac. 37, is as follows:

"In a post-opinion motion for rehearing and to modify the judgment, the appellant drainage district urges that the judgment should go no further than

to require defendant to remove the dike across the Big Slough creek. Possibly that is as far as the judgment now rendered goes. Just what work will have to be done to comply with the decree of the court is a matter to be taken up in the court below, in the event a controversy arises between the parties concerning it. The trial court still has jurisdiction of the case to see that its decree is carried into effect, and for that purpose may make any additional orders, or may, if it becomes necessary, modify its decree as necessity or justice requires."

Upon the mandate from this court being filed in the district court, a writ of mandatory injunction was issued directed to the sheriff of Sedgwick county to carry into effect the judgment that had been rendered against the drainage district. The district filed a motion to quash that writ and prayed that in the event the motion to quash should be denied, the district be specifically informed "as to any and all requirements and orders of the court, in addition to the removal of 'the dike across the Big Slough,' and what work the court orders done to comply with the judgment, decree and writ of the court, other than the removal of the dike across the Big Slough." That motion was denied. The Riverside drainage district then made answer and return to the writ, which answer in effect said that the judgment of the court had been complied with so far as it was possible so to do. Afterward, on the motion of the plaintiff, a writ to execute the judgment according to law was placed in the hands of the sheriff. Motion to quash that writ was filed by the district, and on the hearing of that motion evidence was taken, from which the court made additional findings of fact. Because of what appears to be some confusion in the judgment of the court, the findings of fact are set out in full, omitting one long complicated description of a ditch to be dug.

"*Twenty-six.* Under an execution issued on the judgment in this action, the defendant, the Riverside drainage district, removed the dike called the new dike, which was described in the eleventh finding of fact on the original trial of this action, and the following part of the old dike which was also described in the same finding of fact, to wit:

"Beginning at the half-section line, running east and west through section 7, and extending thence south a distance of approximately 190 yards to a point about 72 feet west of the south end of the new dike.

"This old dike is the dike which was constructed in the latter part of 1912 or in the early part of 1913. The removal of the new dike and the said portion of the old dike does not permit or cause the water to flow in the north and south forks of the Big Slough as it did before 1912 and immediately before the construction of the dikes and ditches in section 7, as described in the former findings of fact in this action.

"To permit or cause the water to flow in the north and south forks as it did naturally before 1912 and before the construction of the dikes and ditches in section 7, the court finds that a dam should be constructed across the south fork and a ditch should be dug and a ditch filled as hereinafter set forth.

"The construction of the dam and ditch and the filling of the ditch are made necessary because under the evidence introduced on the original trial and since the rendition of the original judgment in this action, and as determined by original finding of fact No. 11 and other findings of fact, the south fork was deepened and the water caused to flow down the south fork.

"*Twenty-seven.* A concrete dam should be constructed at a point 688 feet south of the stone at the center of section 7, township 28, south of range 1 east in Sedgwick county, Kansas, across the south fork of the Big Slough; it should be 65 feet in length, 3 feet high, 1½ feet above the bottom of the slough, and 1½ feet under the ground, twelve inches thick at the bottom and six inches thick at the top.

"To the east, and opposite the east end of the concrete dam, the dug ditch running north and south in the northwest part of the southeast quarter of said section 7, should be filled with earth from the top of the ditch on one side to the top of the ditch on the other side. The height of this fill should be at least three feet and the width should be at least ten feet at the bottom and the width at the top should be four feet.

"On the lower side of the concrete dam the bed of the slough should be filled with crushed rock to within a foot of the top of the dam; the rock should have a slope of three feet horizontally to one foot vertically.

"*Twenty-eight.* A ditch ten feet wide on each side of the center line, described as follows, should be dug across the southeast quarter of said section 7, to wit: . . .

"This ditch should be ten feet wide at the bottom on each side of the said center line and the depth for the entire width of the bottom of the ditch should be the depth at that place as indicated by the center line. A ditch so constructed will conform to the course, depth and width of the north fork as it existed prior to 1912 and prior to the construction of the dikes and ditches in section 7 as nearly as it is now possible to construct a ditch in the course of the original north fork.

"*Twenty-nine.* A ditch described as follows would cost less and would be more effective in carrying off the water, to wit: A ditch ten feet wide on each side of center of section 7, township 28 south, range 1 east to the bridge on Seneca road, beginning at a point hub A, three hundred ninety-eight feet south of stone at center of section 7, township 28 south, range 1 east of the sixth P. M., and on the half-section line between the SE¼ and the SW¼ of said section, at which point the north fork of the Big Slough across said half-section line, then running south 70 degrees, 20 minutes east, a distance of two thousand seven hundred ninety-eight and 57/100 feet to the center line of Seneca road and bridge. Beginning at center of section 7, the elevation of ditch should be 90.5 feet and should have a fall of 1/10 foot per one hundred feet.

"The ditch should be ten feet wide at the bottom on each side of the center line and the depth for the entire width of the bottom of the ditch should be the depth at that place as indicated by the center line.

"*Thirty*. Mr. Barnett, the present owner of the SE¼ of the said section 7, purchased this land about the year 1920. He is not a party to this suit, but he is charged with knowledge of what was done by the Riverside drainage district since the land is within the district. He is opposed to the construction of any ditch across his land, but if it is finally determined that a ditch should be constructed across his land, he would prefer that a ditch should be constructed in a straight line as set forth in finding number twenty-nine. If, at any time, before an execution is issued to carry out the judgment in this action, Barnett and the Riverside drainage district file in this action a written consent signed by them, requesting that a ditch be dug as described in finding number twenty-nine, then an execution shall issue to and commanding the sheriff to dig the ditch as described in finding number twenty-nine.

"*Thirty-one*. These findings are based upon the evidence introduced on the original trial of this action and on the evidence introduced since March 22, 1928, the date of the issuing of the writ of mandatory injunction.

"*Thirty-two*. The sheriff is authorized to employ a competent surveyor to assist him in determining the courses and distances and depths of the ditch to be dug.

"*Thirty-three*. The court refuses to make the first finding of fact and the conclusion of law set forth in the request of the defendant for additional findings of fact made the 11th day of August, 1928. In response to said request, the court finds that no watercourse other than the north fork was obstructed by the embankment referred to in plaintiff's petition, but the construction of said embankment caused a greater amount of water to flow down the south fork and thereby the south fork was deepened.

"*Thirty-four*. The defendant drainage district erected a dike on the east side of the south fork but not across the south fork.

"*Thirty-five*. The court refuses to make the other finding of fact requested by the defendant on the hearing on October 3, 1928.

"*Thirty-six*. The following part of the old dike should be removed: Commencing at a point on the old dike one hundred ninety yards south of the half-section line running east and west through said section 7 and extending south to a point due east of the concrete dam to be constructed.

"*Thirty-seven*. The first part of finding of fact No. 9, made on the first trial of the case, should be amended to read as follows:

"The Big Slough crosses Meridian highway from the west and enters section 7 on the west line at a point about eighty rods south of the northwest corner of the southwest quarter of said section 7 and flows in an easterly and northeasterly direction to a point about six or seven hundred feet west and one hundred and fifty feet south of the center of said section 7, where, prior to 1912, it divided into two parts. The rest of the ninth finding of fact should stand as originally written."

The district moved to strike out the new finding of fact No. 30, because it was not binding on the drainage district; moved to strike out findings numbered 26, 27, 28, 29, 32, 36 and 37, on the grounds that there was no evidence to support them—that they deprived

the district of property without due process of law, and that they showed on their face an attempt to establish a system of drainage and public improvement not conducive to the removal of the nuisance complained of by the plaintiff, and an indirect attempt on the part of a court to usurp the functions of a public corporation; moved to strike out finding No. 27 on the ground that the construction of a concrete dam across the south fork of the Big Slough would be an obstruction of the channel which the court found to be a natural watercourse; and moved to strike out all the findings and orders relative to the removal of any bank or levee on the east bank of the watercourse described as the south fork because the district had the right to construct the dike on the east bank of the south fork. That motion was denied. A motion for new trial was filed, which was also denied. The judgment ordered that—

"The defendants and each of them be restrained and enjoined from permitting or causing the water, as set forth in said findings, to flow in the north and south forks of the Big Slough as it did before 1912 and immediately before the construction of the dikes and ditches in section seven (7) . . . as described in said findings of fact, . . . and that said defendants, and each of them, shall construct or cause to be constructed a concrete dam, as described in said findings of fact, and shall dig or cause to be dug across the southeast quarter of said section seven (7), a ditch, in accordance with the twenty-eighth finding of fact, and as described therein, unless the defendants, W. H. Barnett, and the Riverside drainage district, act in accordance with the thirtieth finding of fact, in which event said defendants shall dig or cause to be dug the ditch described in the twenty-ninth finding of fact, instead of the ditch described in the twenty-eighth finding of fact.

"It is further considered, ordered and adjudged, that the defendants, and each of them, be and they are hereby restrained and enjoined from maintaining the dike described in the thirty-sixth finding of fact and that said defendants, and each of them, be and they are hereby ordered to abate the same."

We quote from the brief of the district as follows:

"The defendant is not engaged in 'captious quibbles.' It desires to have the litigation terminated. We have done all that the mandatory writ, issued and served on us, required us to do, namely, 'restore the land . . . to the same condition as it existed prior to the erection of the works, ditches and embankments,' and the court so finds. Defendant concedes that equity procedure is usually elastic enough to bring about any relief within the issues, but to require the defendant to erect and maintain a permanent system of drainage, while it is within the power of the court to determine what is necessary to establish the *status quo* without the erection of a concrete dam, is a near approach to an encroachment by a coördinate department of government. Defendant has a dual duty—a mandate from the people as well as from the court."

The additional findings supplemented the former ones. The trial court acted under the judgment of this court in hearing more evidence, in making the additional finding of fact, and in rendering judgment on all the findings made. The judgment appears to be as fair and equitable as it can be made under the circumstances. This litigation should end. This court is unable to find any reversible error in the record presented.

The judgment is affirmed.